THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | | |
|---|---|---|
| CUSTOM DYNAMICS LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | COMPLAINT |
| | ) | |
| RADIANTZ LED LIGHTING, INC. | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff, complaining of the Defendant, alleges and says:

## PARTIES

1. Plaintiff Custom Dynamics LLC ("Custom Dynamics") is a limited liability company organized and existing under the laws of the State of North Carolina and having its principal place of business at 12335 Wake Union Church Road, Suite 203, Wake Forest, North Carolina 27587.

2. Defendant Radiantz LED Lighting Inc. ("Radiantz") is a corporation organized and existing under the laws of the State of California and having its principal place of business in Brookings, Oregon.

## JURISDICTION AND VENUE

3. This is an action under the Sherman Act, Clayton Act, and Robinson-Patman Act, 15 U.S.C. § 1, et seq. This Court has subject matter jurisdiction over these federal claims pursuant to 28 U.S.C. § 1331.

4. This action further includes claims for breach of contract, tortious interference with contract, and tortious interference with prospective economic advantage, as well as a claim

for Unfair and Deceptive Trade Practices according to N.C. Gen. Stat. § 75-1. These claims form part of the same case or controversy under Article III of the United States Constitution and, as such, this Court has supplemental jurisdiction over these claims according to 28 U.S.C. § 1367(a). This Court also has jurisdiction over these claims under 28 U.S.C. § 1332, as the amount in controversy exceeds $75,000.

5. Radiantz has regularly engaged in business in this judicial district. This Court has personal jurisdiction over Radiantz. Venue is proper in this district pursuant to 28 U.S.C. § 1391.

## FACTS

6. Custom Dynamics markets and sells motorcycle lighting accessories via the Internet and from its showroom in Wake Forest, North Carolina. Custom Dynamics offers one of the largest selections in the world of light emitting diode (LED) motorcycle accessories for retail and wholesale sales.

7. Radiantz manufactures and sells retail and wholesale LED motorcycle accessories and is the owner of U.S. Patent No. 6,371,637, for a compact, flexible, LED array ("Patented LED Array").

8. Radiantz enjoys market power in the United States for sales of compact, flexible, LED arrays.

9. For several years, Custom Dynamics purchased LED arrays from Radiantz.

10. In late 2007, the relationship between the parties collapsed. Several lawsuits commenced between the parties shortly thereafter, including a lawsuit before this court. In the suits, Radiantz complained of *inter alia* Custom Dynamics marketing and selling LED products in competition with Radiantz.

11. On February 22, 2008, the parties resolved their litigation via a written settlement agreement ("Settlement Agreement").

12. In the Settlement Agreement, Radiantz agreed to sell and supply to Custom Dynamics all of Custom Dynamics's UCC requirements for Patented LED Arrays (referred to in the Settlement Agreement as "Flex Products"), as generally manufactured for sale to the general public ordered by Custom for a period of not less than five (5) years from the date of execution of this Agreement.

13. Under the Settlement Agreement, Radiantz promised to accept, exercise good faith in, and promptly fulfill all purchase orders issued by Custom Dynamics for Patented LED Arrays, within its inventory limitations. The parties also agreed that Custom Dynamics was free to purchase other products from third parties.

14. In the Settlement Agreement, the parties also agreed to not disparage each other regarding the disputed issues, and agreed to limit their statements about such disputes to a short sentence acknowledging that there had been disagreements but the parties have reached an agreement and moved on.

15. Custom Dynamics is informed and believes that Radiantz has, since signing the Settlement Agreement, made disparaging comments about Custom Dynamics to third parties regarding the issues that had been in dispute in the original lawsuits, in breach of the Settlement Agreement.

16. Upon information and belief, since the signing of the Settlement Agreement, Mitch Valentine, president of Radiantz, told Raw Design, a long-time customer of and supplier to Custom Dynamics, that Custom Dynamics had "screwed over Mitch," stolen Radiantz's designs, copied its products, violated its patents and "ripped off Mitch." Raw Designs informed

3

Custom Dynamics that Mitchell Valentine requested Raw Designs not to sell Custom Dynamics any more Radiantz products. Raw Design has since refused to sell any of Radiantz's products to Custom Dynamics and has refused to purchase further products from Custom Dynamics. These statements violate the express terms of the settlement agreement and have damaged Custom Dynamics.

17. While Custom Dynamics complied with the terms of the Settlement Agreement, Radiantz refused to provide Patented LED Arrays to Custom Dynamics.

18. As a condition of continuing to sell compact, flexible, LED arrays to Custom Dynamics, Radiantz told Custom Dynamics that it must discontinue purchasing non-patented LED arrays from sources other than Radiantz. When Custom Dynamics refused, Radiantz severed the relationship between the parties and discontinued selling Patented LED Arrays to Custom Dynamics. Radiantz also refused to sell to Custom Dynamics parts necessary for using Patented LED Arrays that Radiantz had previously sold to Custom Dynamics, thus effectively preventing Custom Dynamics from selling those previously purchased Patent LED Arrays.

19. Soon after Radiantz discontinued selling Patented LED Arrays to Custom Dynamics, it resumed a pattern of predatory pricing of its Patented LED Arrays, of which Custom Dynamics still had substantial quantities in inventory, and of non-patented LED Arrays that Custom Dynamics also offers for sale.

20. Upon information and belief, after discontinuing sales to Custom Dynamics, Radiantz informed other dealers that as a condition of purchasing Patented LED Arrays from Radiantz, the dealers must discontinue selling LED products to Custom Dynamics. Some dealers have since refused to accept orders from Custom Dynamics.

21. Over this same period, Radiantz has engaged in a pattern and practice of false and deceptive advertising, to include the following:

    A. Mimicking and copying Custom Dynamics' advertising and trade dress in product literature;

    B. Copying Custom Dynamic's long used tagline TOTAL CONTROL IN THE PALM OF YOUR HAND$^{TM}$, which Custom Dynamics uses in conjunction with an LED remote control system, by marketing a competing LED remote control system as TOTAL CONTROLZ;

    C. Falsely advertising directly and through its distributors that Radiantz offers the "brightest LED products in the industry" when, in fact, the Radiantz LEDs are no brighter than those offered by Custom Dynamics and other competitors;

    D. Mimicking Custom Dynamic's tagline THE BEST LEDs ON THE MARKET TODAY BACKED BY THE BEST WARRANTY by falsely advertising that Radiantz offers "The best LEDs on the planet backed by the best warranty on the planet"; and

    E. Taking and mimicking text and images from Custom Dynamic's website for use on Radiantz's website.

22. Radiantz's actions have damaged Custom Dynamics, to include depriving Custom Dynamics of access to non-patented LEDs, loss of market share, and loss of wholesale accounts, loss of sales and profits.

## COUNT I:
## ILLEGAL PRICING
## CLAYTON ACT & ROBINSON-PATMAN PRICE DISCRIMINATION ACT
## 15 USC § 13

23. Paragraphs 1-22 are hereby incorporated by reference.

24. Radiantz has sold the same LED products at different prices to different purchasers and has offered different warranties to different purchasers.

25. Radiantz's pricing and warranty practices for LED products has been predatory.

26. Radiantz has engaged in price discrimination for purposes of lessening competition and to create a monopoly in the US market for flexible LED arrays.

27. Radiantz's price discrimination reasonably may cause and has caused injury to competition.

## COUNT II:
## ILLEGAL TYING AND CONDITIONS OF SALE
## SHERMAN ACT & CLAYTON ACT
## 15 USC §§ 1 & 14

28. Paragraphs 1-27 are hereby incorporated by reference.

29. Radiantz possesses market power in the US market for flexible LED arrays for motorcycles.

30. Upon information and belief, Radiantz has offered to sell and has sold its Patented LED Arrays on the condition that buyers not deal with competitors of Radiantz, with the effect of lessening competition.

31. Upon information and belief, Radiantz has offered to sell and has sold its Patented LED Arrays on the condition that buyers also purchase non patented, LED products from Radiantz, with the effect of lessening competition.

32. Upon information and belief, Radiantz has sold flexible LED arrays for motorcycles to third parties on the condition they do not sell flexible LED arrays to Custom Dynamics.

33. Radiantz has offered to sell, and upon information and belief, has sold flexible LED arrays for motorcycles on the condition that retailers, to include Custom Dynamics, purchase other LED products from Radiantz and not from lawful competitors of Radiantz, with the effect of lessening competition.

34. Radiantz's illegal tying and conditions of sale and exclusionary actions have damaged Custom Dynamics.

## COUNT III:
## ATTEMPTED MONOPOLIZATION & MONOPOLY LEVERAGING
## 15 USC § 2

35. Paragraphs 1-35 are hereby incorporated by reference.

36. Radiantz has intent to monopolize the U.S. market for LED arrays for motorcycles.

37. Radiantz's intent is evident in its illegal sales arrangements, anticompetitive pricing, refusal to abide by its supply contract with Custom Dynamics unless Custom Dynamics discontinues business with competing manufacturers, and efforts to use its market and patent power to compel third parties to boycott dealings with Custom Dynamics.

38. There is a dangerous probability that Radiantz will succeed with its campaign to monopolize the LED array market for motorcycles in the United States.

39. Radiantz is using its pre-existing monopoly in the flexible array LED market to force consumers to do business with the Radiantz in other LED markets to the detriment of consumers.

40. As a result, Custom Dynamics has been harmed.

## COUNT IV
## COMBINATION IN RESTRAIN OF TRADE
## N.C. GEN. STAT. § 75-1.

41. Paragraphs 1-40 are hereby incorporated by reference.

42. N.C. Gen. Stat. 75-1 states, "Every contract, combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce in the State of North Carolina is hereby declared to be illegal."

43. As discussed above, Radiantz has contracted and conspired with third parties for purposes of restraining trade with Custom Dynamics, an entity of and doing business in the State of North Carolina.

44. As a result of such dealings, some third parties have agreed to discontinue doing business with Custom Dynamics.

45. These agreements restrain trade in the State of North Carolina.

46. These agreements are in violation of the Sherman Act, and thus illegal.

47. Upon information and belief, Radiantz has entered into such agreements and/or conspired with a number of third parties doing business with or regarding Custom Dynamics, evidencing a common scheme.

48. Radiantz's agreements and conspiracies with third parties have caused harm to Custom Dynamics.

## COUNT V
## BREACH OF CONTRACT

49. Paragraphs 1-48 are hereby incorporated by reference.

50. There is a valid Settlement Agreement between Custom Dynamics and Radiantz.

51.     The Settlement Agreement requires Radiantz to make a good faith effort to supply Custom Dynamic's requirements for Patented LED Arrays to Custom Dynamics.

52.     Radiantz has refused to supply Patented LED Arrays to Custom Dynamics and has refused the pricing arrangements required by the Settlement Agreement.

53.     Radiantz's refusals are material breaches of the Settlement Agreement.

54.     As a result of Radiantz's material breach, Custom Dynamics has been harmed.

## COUNT VI
## CIVIL CONSPIRACY

55.     Paragraphs 1-54 are hereby incorporated by reference.

56.     Radiantz has entered into agreements with third parties for purposes of harming Custom Dynamics and restraining trade.

57.     Radiantz and its co-conspirators have caused harm to Custom Dynamics pursuant to their common scheme.

## COUNT VII
## UNFAIR AND DECEPTIVE TRADE PRACTICES
## N.C. GEN. STAT. § 75-1.1

58.     Paragraphs 1-57 are hereby incorporated by reference.

59.     Radiantz has engaged in false and unfair advertising, both directly and through its distributors, by making false representations about its goods and services that are in direct competition with goods and services offered by Custom Dynamics.

60.     Radiantz has also engaged in false and deceptive practices by copying the trade dress and marketing of Custom Dynamics for the same and competing products.

61.     Radiantz's conduct has caused harm to the consuming public of the State of North Carolina.

WHEREFORE, Plaintiff Custom Dynamics respectfully prays the Court:

A.  Award Custom Dynamics damages in excess of $75,000 to compensate for the harm suffered as a result of Radiantz's afore described illegal activities;

B.  Award Custom Dynamics punitive damages to deter Radiantz from engaging in future, willful misconduct;

C.  Permanently enjoin Radiantz from engaging in any further anticompetitive conduct and award Custom Dynamics the full extent of relief to which it is entitled under the Clayton Act; Robinson-Patman Act and Sherman Act;

D.  Permanently enjoin Radiantz and those acting in concert with it from publishing any further false advertising and order Radiantz to run prominent corrective advertisements on its website and in all publications in which Radiantz has published or caused to be published such false statements.

E.  Award Custom Dynamics attorney fees and treble damages for Radiantz's unfair and deceptive trade practices, as authorized by N.C. Gen. Stat. § 75-16.

F.  Award such other forms of relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted, this the 20th day of November, 2008.

        **COATS & BENNETT, P.L.L.C.**
        **Attorneys for Plaintiff**

        By:  /s/ Anthony J. Biller
              Anthony J. Biller
              N.C. State Bar No. 24,117
              Daniel P. Homiller
              N.C. State Bar No. 35,345
              1400 Crescent Green, Suite 300
              Cary, NC 27518
              Telephone: (919) 854-1844
              Facsimile: (919) 854-2084